22-405-5544 tournament Miss Doan, and you can correct my pronunciations. Doan is just perfect and Pandya is how we pronounce it, your honor. May it please the court. Jennifer Doan with Haltman Doan from Texarkana, Texas on behalf of the appellants or what we know as the Pandya defendants. I would like to reserve five minutes for rebuttal, please, your honor. Pre-dispute jury waivers, particularly in the context of a fraudulently induced contract, are inconsistent with the history and tradition of common law, especially here where the fraud is a scheme and specifically a design to seek a ruse for Pizza Hut only to get a release and a jury waiver. We know that here because the lawyer that's drafting the transfer agreement is simultaneously unbeknownst to Jay Pandya and his defendants drafting a litigation, this lawsuit, against the Pandya defendants. And while they're drafting that lawsuit, they know they need a jury waiver. Excuse me, one of the questions that raises, because this was presented to the lower court and was not accepted, is just what our standard of review is. There may be some acceptance, it's de novo, of a waiver of this constitutional right. I'm not sure about all the fact findings. The knowledge that your client had of this, what to make of handwritten notes on one version of it, where apparently he saw the waiver. What would you say is the standard of review on the fact findings by the district court? I think when you look, Your Honor, at the Jarsky opinion from this court, the constitutional right that we're dealing with here, the Seventh Amendment right to trial by jury, and any waiver of whether that can be a constitutional right or not, that is all de novo. And what the court considered, or what we think the court erred in considering here, Your Honor, because the court did look at, the problem here is the court skipped to these factor tests of knowing involuntary. And in doing that, the court ignored and did not mention at all, how does a fraud look and how does that come into context with respect to knowing involuntary? We posit that there cannot be, in a fraud context, knowing involuntary, because you do not know what's going on. As the court knows, fraud is, I'm looking you in the eye, I want you to believe me, I know the whole time I'm telling you something different. That's what happened here with Mr. Pandia. So how does fraud- Is it a matter of first impression for us whether we look at whether the fraud was solely at other terms of the contract as opposed to any fraud inducement into the waiver of the jury? It is, Your Honor. This is an opportunity for this court to give the lower court's guidance into how to analyze jury waivers under the context of fraud. It also gives context and guidance to the practitioners with this as well. This court has not written on this and we would like for this court to take this case as an opportunity to write, to help the courts. Because in this particular case, Your Honor, we do- But in the right way. Yes, Your Honor, definitely in the right way. We do believe that we did raise this issue in the argument and in the briefs here, Your Honor, and in the third amended counterclaim. We believe there's evidence of that. But back to where the jurors were in not considering fraud, they also didn't consider the presumption against a jury waiver. That's not discussed anywhere in this trial court's opinion. You led off on your argument discussing history and tradition. And I just want to clarify, is it, in fact, your argument that pre-suit waivers like this, pre-suit jury waivers, are categorically invalid because, as you read the history, they didn't exist at the founding? I think that's an issue that this court has to decide. It's a really big general issue and it's a little bit hairy and maybe a little bit scary given some other courts have held. But we're talking about a constitutional right here. And if you go back to history and tradition and we look to what happened there, this is another thing that the trial court erred in, not looking at fraud, not looking at the presumption against a jury waiver, not looking at the history and tradition under the Seventh Amendment, and not looking at Rule 38. In the trial court's analysis, none of this was discussed. And that's a problem because when we look here at history and tradition, pre-suit disputes, jury waivers, would not have been recognized. And yet the Supreme Court has said that we can do some type of pre-suit jury waiver. So where is it recognized and where is it not recognized? Does the fraud come into that context? And does the fraud, are we going to have a form over substance rule where it has to be in a certain paragraph only in the complaint or in the counterclaim? Or can we argue it to the court when we're talking about a motion to strike, which we did here and we can definitely connected the fraud to the nexus of the waiver of the jury demand. So assuming we assume that waivers like this are not categorically invalid, which side bears the burden on proving the validity of this specific waiver? Is it the party seeking to enforce it, the party seeking to evade it? So that issue has not yet been spoken on by the Fifth Circuit as well. So it's also an issue that this Court needs to address. Although the courts under the Fifth Circuit all hold that it is the burden of the party trying to seek the waiver of the jury. And that would make sense here because if it is your constitutional right and you've timely demanded it under Rule 38 and you've raised a new issue, your demand has been made. What are you saying that your client didn't know the waiver was there? As I read the record, your client had the document, circled it, and zeroed right in on this. And he was fully aware of that. And he's a sophisticated businessman, quite honestly. He had a considerable bargaining power that people got over. The bargaining power, it strikes me from this record, is that the last thing a pizza hut or a franchisor wants is a darkened storage out there in the marketplace. And that's his leverage. You have a considerable leverage. So you're not on his face. And I've kind of detailed it a little bit, the counter-argument, because it gets your response to it. But as I read this record, he plainly demonstrated a great deal of power in negotiating this route. And he's sophisticated. And while the counsel may have drafted this instrument, it certainly was not weaned by him. He knew about it. And so there you are. I mean, he's got a waiver. Bruin doesn't speak to the—I can waive my constitutional right to carry a gun. You can waive constitutional rights. You can waive a constitutional right. So here, when we look at here, Your Honor, the four factors that you just mentioned there, unknowing and voluntary. And that's where we look to this Court to give some guidance here. Because what Mr. Pandia did not know here was that the time he is—there's a jury waiver that's being slipped in on the last day. So the context of what happened here, I mean, he is a sophisticated businessman. The last day after some considerable period of time, you've taken control of this, et cetera, et cetera. There's been three weeks of negotiations between the parties. Three weeks in negotiating this transfer agreement. And yet in the last day, Pizza Hut adds in the middle of the miscellaneous paragraph a jury waiver. Mr. Pandia, as you'll see from the record, he circles the entire paragraph, and then he writes the note about mutual releases, which he talks about also as well in the general release on paragraph 11. So that's his focus here. And you'll see in the record— That circling. Is it clear when that circling was made and the sentence with the waiver is underlined? Is it not? Is it clear when the underlining was done? Was it done before the execution of the agreement? So what you see as underlining is actually a red line. So it comes in on that last draft. Okay, but getting to the knowledge of your client of that, it seems to me he's writing on it, it's redlined as opposed to underlined, but that's done before the execution of the agreement? Is that clear? That last draft was redlined, and it was before the execution, the He says that he saw the words. He says that he read it. He definitely admits that he circled the paragraph. But if you'll look in the record, and I'm on page, record page 11753, Mr. Pandia sends the draft that you're talking about with the circle and the note dealing with mutual releases, not the jury waiver, back to not only his counsel but also to Pizza Hut, and he says, please see my comments below, some I don't understand or know. So he doesn't, it's not voluntary with full knowledge that we anticipate when you're negotiating between two parties. And how can anybody, any party who is being fraudulently induced, I have Pizza Hut over here putting in this jury waiver because they're getting ready to sue me. They know they're seeking a jury waiver, and yet they're putting it in the very middle of a miscellaneous paragraph. There's no communications about this. There's no negotiations about this. These two companies, Pizza Hut and the Pandia defendants, have lots of contracts. This is the first one ever with a jury waiver. That's never happened before. So it's the fraudulent nature of not knowing about this additional lawsuit that's out there and that they're getting ready to be sued in this lawsuit, and they want the jury waived in this lawsuit that we're talking about. Now that's... We need to look at this perhaps in two different ways. One is, should the fraud, to the extent it's factually shown, have to be directed at the jury waiver and not just at other terms? And secondly, if it has to be directed at the jury waiver, at least in part, whether there's sufficient evidence here that the district judge should have brought. Looking at this from the second, it seems, from the second analysis, which is, it is right to look at it just in terms of whether there's any fraud applicable to the jury waiver. The evidence is the evidence that you've been talking about, which is the lateness of its arrival. You had people in suits and briefcases ready to go into court, whatever you want to identify that scene as. Is that your evidence? I'm not saying there's anything wrong with that evidence. Is that the collection of evidence that you have? The evidence is the not telling us, the fraudulent... So the transfer agreement, they never intended to ever seek this agreement, a jury waiver and a release. And we do put that... Talking to litigation counsel or even being aware of whether something would be litigated, when you've gone through negotiations and an extensive period of time before the negotiations when previous agreements didn't work out, is what prudence may well suggest. And I do wonder if your own client was thinking, you know, if this goes to litigation, how am I best protected by all of this? So I don't see it seen as a possibility as much evidence. I'm just wondering why we should weigh this differently than the district judge did. Well, because here, Your Honor, the judge looked at, did not consider or even discuss knowing involuntary in the aspect of fraud. If you're looking at this with that context of fraud, and not every case involves fraud, but this is a substantiating case of fraud here. It passed Rule 9. It passed a motion to dismiss. It passed a motion by Jay Maul. It had the Pizza Hut defendants move for Jay Maul, or plaintiffs move for Jay Maul, but they did not here and we discussed that in the brief. But this is not a rigmarole fraud claim here, it is a substantiated claim of fraud. And so, to look at the findings of fact and conclusions of law later on in this case that the judge decided when he denied the jury demand, is, that's not the proper time period. The proper time period to look at these facts would be, I read the district court's order and it's very detailed. He did, but he did not discuss the fraud at all. He did not discuss the Seventh Amendment or Rule 38 or the presumption against jury waiver. And here's the difference. In that footnote, Your Honor, where the court's laying out, okay, look, for the motion to dismiss, I'm going to presume everything that the plaintiff says is true, but I don't have that same presumption on the jury waiver. He does. He should presume that the jury, that there's, that the presumption goes against the jury waiver. And he did not discuss the fraud at all. That's where the error is. And this court needs to give some guidance that if it's a substantiated claim. He pointed out that it was circled and marked. He went right through these things in a very detailed order. But not in the context of In the same order, this judge, the fraud that he said in the exact same order could pass on to trial. The fraud is, you have Pizza Hut knowing and designing a lawsuit that's getting ready to file against Jay Pandia. It doesn't tell it. It doesn't tell Jay Pandia. And yet, that same lawyer that's drafting the lawsuit is slipping in a jury waiver into the case. But that's not an issue for today, Your Honor. The waiver, right, to cover any money, damages, etc., etc.? There were other things, Your Honor, as well. Not other things. The whole basis of damages in the case would take it away in that order. And that was marked too. He's aware of that. Ultimately, that was, Your Honor, because it did not get to go to a jury. I mean as we all know, 12 heads are better than one, and here the issue should have gone to the jury. Because we're looking at only this one individual, and we look through the findings of facts and conclusions of law, and he is weighing the evidence. I know I'm back into my rebuttal time, Your Honor. I want to save time for rebuttal. No, you're not losing time. You're answering the question. Okay. I wanted to make sure. Your Honor, so it is that fraud. And in the same order, the trial judge says, yes, that's enough. You've actually pled fraud under Rule 9. And we're going to go ahead and deny the motion to dismiss and let that fraud claim go on. And then later on in the case, he denied Pizza Hut's motion for summary judgment and let fraud go on to that case. That's a substantiated claim of fraud, and that should have been analyzed when you're looking at knowing and waiver. Nowhere in his analysis of the jury waiver did he mention fraud. Nowhere. Not in the footnote, not anywhere. So when you're looking at, yes, he circled it, but yet it's a fraudulent issue here. And yet it's not circulating just the jury waiver. What is the relevance of circling if it's not fraud? So he's circling the entire miscellaneous paragraph. Okay. Yes. And so that's the issue. And the note goes to the mutual releases. It does not go to the jury waiver. Okay. All right. Yes. I'll reserve the rest of my time for rebuttal. Thank you, Your Honor. May it please the Court. This appeal is about an experienced businessman seeking to evade the enforcement of a mutual jury waiver in a custom-made contract that he negotiated while represented by two attorneys, all so that he can get a do-over after losing at trial for reasons that are wholly unchallenged on appeal. This Court should reject his arguments for several reasons, two of which I would like to emphasize today. First, the jury waiver easily satisfies the knowing and voluntary standard for enforcement. And second, Mr. Pandia's failed fraud claim does nothing to impede the enforcement of that waiver. There are additional independent reasons for this Court to uphold the district court's ruling, but we're prepared to submit those on the briefing unless the Court has questions about them today. Turning to my first point about the knowing and voluntary standard, there are several facts that you did not just hear from my friend on the other side. Mr. Pandia has negotiated transactions worth hundreds of millions of dollars. He owns multiple companies and has extensive real estate holdings. Collectively, his businesses employ more than 5,000 people, and they span dozens of jurisdictions, both within the United States and internationally. And notably, the record shows that Mr. Pandia and his businesses have been involved in dozens of lawsuits. Simply put, Mr. Pandia is a sophisticated actor who is perfectly capable of understanding the plainly written jury waiver here. Mr. Pandia also had an opportunity to negotiate the contract, and he did so with the assistance of his two attorneys. He vigorously negotiated this custom deal over the course of three weeks, and in the process secured major changes in his favor. Consider, for example, that Pizza Hut's original proposal to Mr. Pandia would have allowed him an opportunity for debt relief on the substantial amount that he owed, but that's it. Through the negotiations, however, the deal morphed into an opportunity not just for debt relief, but also a $2 million payment and a mutual release upon a successful sale of the stores. And that last point, the addition of the mutual release, is one I would particularly emphasize for the Court's attention, because of when that happened. Mr. Pandia was presented with the final draft of the contract with the red line that you were discussing with my friend on the other side. He circled the paragraph. He made handwritten notes. Those notes were exclusively focused on getting a mutual release. That draft of the contract that had the jury waiver would not have given Mr. Pandia a release upon a sale of the stores. What happened then? Pizza Hut received that draft with his comments and added a mutual release. It appears in the final version that is signed by the parties in Section 11. I don't understand the facts. The comments he made, did that go to his lawyer and then to Pizza Hut? It went to both, Your Honor. It went to both. It's not something his lawyer dealt with before it went to Pizza Hut. The copies, it was simultaneous. My recollection is the e-mail where he transmitted those comments went to both sets of lawyers at the same time. There were negotiations made to the contract after the waiver was added? Precisely, Your Honor. And those negotiations yielded favorable terms for Mr. Pandia. So the notion here that this was some type of hardball or overreaching, the record just shows completely the opposite. And Judge Higginbotham, returning to one of the points that you raised related to the disparity or lack thereof in the bargaining power between the parties, here Mr. Pandia wielded considerable leverage. He operated every Pizza Hut store in the nation's fifth largest city. The last thing Pizza Hut wanted to happen is to shutter that entire massive market. And that's why if you study the negotiation history back and forth, you would see that Mr. Pandia's lawyers were making threats at times about closing the stores because they understood that leverage that he had. And as to the conspicuousness of the provision, which is another factor courts have often looked to, again here that's largely irrelevant because the record shows that Mr. Pandia knew about the waiver. Conspicuousness is often a proxy for actual awareness. Was the provision so prominent that we can assume someone would have noticed it? Here, no proxy is needed. Now, for all of these reasons, under any set of factors that other courts have looked to, the waiver here was knowing and voluntary. And I'll turn to my second point about why the failed fraud claim does nothing to impede that. Your Honor's noted correctly, this is an open question in the Fifth Circuit. But you're not riding on a completely blank slate. Every other federal circuit to analyze the issue, and a plethora of district courts across the country, have consistently held that the allegations of fraud must be specific to the jury waiver provision, aimed directly at it. Correct? Correct, Your Honor. You said every other circuit? That has written on the issue. That is correct. I'm not sure I understood your statement not to go further than what I understood the case to be. That is correct. Two other circuits. We have every circuit that's written on the issue, Your Honor, has held in this manner. And it makes perfect sense when you consider the purpose of these provisions. Whether it's a jury waiver or an arbitration clause or a forum selection clause, these provisions really operate as a contract within a contract. It's an agreement in advance about how you're going to handle future disputes between the parties, including with respect to the broader contract as a whole. So unless there's fraud or undue coercion as to that specific subcontract, it should be enforced. To hold it otherwise would, in fact, defeat the reason the parties entered into the provision in the first place. Excuse me. If you have a contract in which one party engaged in fraud, to try to separate what the fraud affects may be creating unnecessarily factual questions. It seems to me that if there is some fraud as expressed by the plaintiff in this case that went to other terms, to have that fraud more easily upheld by not having juries, somebody can be part of it, that becomes the factual analysis that's necessary. And I'm just wondering if the—I don't want to use the wrong phrase—if it's worth the effort to try to divide it that way. So give me your best take at a justification that is both factual and legal as why that is the preferable way to proceed. It's preferable, Your Honor, and it's something this Court and others do routinely in the arbitration context. That's exactly how this is treated, and it is for the very reason that I was just discussing. What is the purpose of this contractual provision? It's not that it's some type of super provision, and we're certainly not here relying on any presumptions or preferences for it. What we're saying is look at what it is and what these provisions are, are an agreement by the parties in advance about how to handle potential future disputes between them, including about the contract in which this language appears. And so, and this is the reasoning you've seen the Second Circuit use in the Merrill Lynch case and the Texas Supreme Court in In re Prudential. What those courts recognized is that if an allegation of fraud would go to the contract as a whole, could then topple this more specific agreement about how to handle future disputes, these would rarely, if ever, be enforceable, because many of these types of disputes are going to involve allegations of fraud. But doesn't it always correlate that the person accused of fraud is also the person who's trying to do away with the jury? I don't know about that. What I would emphasize— It doesn't seem to me it has to be. If the contract has been created by someone engaged in fraud, at least the terms have, that as you're trying to separate the jury waiver from that, it doesn't seem to me the two always correlate.  The first one is that the jury waiver here is mutual, so it's operating in the same way for both sides. And the second point is it doesn't immunize these provisions from any challenge on the basis of fraud. Makes it harder to challenge. One rather than 12, to hear the distinction made earlier that you have to immunize. It may be harder to challenge, but not for the reasons that would matter considering the purpose of the provision. And that is, if there was some type of situation where a party allegedly snuck in this type of contract, or maybe perhaps there's a case where there's an allegation that the party saw it in the contract and the other party told them, don't worry about that, we would never enforce that against you. Those are the types of allegations that might go directly to the provision itself and thus have some bearing on whether it should be enforced. But there's nothing like that in the record here. And that's where I really want to emphasize, my friend on the other side has now tried to double back and say they have alleged fraud specific to the jury waiver, but that's certainly not how, first of all, the district court understood it. Now my friend on the other side said there was zero mention of fraud as to the jury waiver. That is incorrect in that footnote 3 in the district court's opinion speaks directly to this point and reflects that the district court never understood them to be alleging fraud specific to the jury waiver. And that makes perfect sense because if the court were to look at the transcript from the hearing on the motion to strike the jury demand, you would see that at page 9992 of the record, Pizza Hut's counsel was crystal clear in emphasizing that there was no allegation by Mr. Pandia, that this jury waiver itself was procured by fraud. For the next 25-some pages, my friend on the other side, arguing in response, never once pushed back on that specific point. And that makes sense because if you look at the pleadings, all of the allegations of fraud here go to the contract as a whole, including the points that my friend on the other side has made about potential plans for potential litigation. All of that here goes to the validity of the contract as a whole and is not directed specifically at the jury waiver provision. Do we need to squarely tackle the who bears the burden question? I know you think you win no matter where the burden lies, but do we need to confront it? So do you have to? We don't think so because we think you could assume it either way and rule in Pizza Hut's favor here. As long as you win, we don't need to confront it. That's right, Your Honor. But I would say, as to the circuit split that does exist on this issue, the Sixth Circuit has said that the party seeking to withhold enforcement of the provision should bear the burden. I would say if you tally it up, more courts have gone the other direction. But two points on that. First, the courts going the other direction are almost exclusively relying on a general statement from the Supreme Court's decision in Simler v. Connor, which was in a different context. The question there was whether a federal court determining whether a claim is legal or equitable for purposes of the existence of a right to a jury trial, that's a question of federal law. That's a different question than necessarily the question of enforcing a contractual agreement under State contract law. And so the Sixth Circuit's reasoning and then State supreme courts that are certainly not binding on this Court, but that you could look to their reasoning, the In re Prudential decision that I mentioned earlier from the Texas Supreme Court and the Supreme Court of Connecticut has likewise held that the party resisting enforcement should properly bear the burden, in part because that party is going to be most likely to have the evidence that would be relevant to trying to resist enforcement of an unambiguous contractual provision. So that does make good sense when you dig a little deeper than the general statement from Simler, Your Honor. One final point. JUSTICE SCALIA. Let me ask you something that's actually in Ms. Stone's brief, or at least the appellant's brief, whoever wrote it. It was only at the time, I think, if I'm understanding this, of the filing of the Third Amendment counterclaim that the issue of a jury trial came up. It is undisputed, the appellant's brief says, that until the filing of the defendant's Third Amendment counterclaims, the parties anticipated all issues would be tried at a bench trial. Can you flesh that out a little bit for me? It seems to me it was accepted, if I'm reading this correctly, that a bench trial was agreeable to both sides and nobody was contesting it until that point. MR. CLEMENT. That's exactly right, Your Honor. JUSTICE SCALIA. How long in the process was that? I mean, I look at the dates here. Was this a year of litigation or longer? MR. CLEMENT. More than a year. For more than a year, and for — in fact, the live pleading here is the third amended on both sides. So not only for more than a year, but through initial sets of amendments of the pleadings, the parties here were all operating consistent with the contractual agreement that this would be a bench trial. And, in fact, there was an additional — JUSTICE SCALIA. I read the record. The district court had a — in its pretrial conference, had a very detailed discussion about how this was going to go down, and in terms of organizing exhibits and all those very practical pretrial — if you look at its pretrial order, it details a contemplation of a bench trial. And he says, I read his pretrial order, and that — perhaps I'm just reading the record. And he went forward on that basis.  CLEMENT. That's exactly right, Your Honor. Really, at all times up until that third amended counterclaim by Mr. Pandya, a bench trial was contemplated. And, in fact, the parties had even stipulated and agreed to move the venue. This was originally in the Sherman division, but Judge Schrader resides in Texarkana, and so the parties had agreed for the judge's convenience to move the proceedings from Sherman to the Texarkana division before this issue ever came into the case. So at all times, the parties here were operating as though a bench trial would be proper. And the court, in its — JUSTICE KENNEDY. The — I would simply point out that moving does — how it's tied together. Moving from one to the other is quite significant in regard to whether you have a jury or not. In other words, it matters a great deal whether you're trying the case in Dallas or in Tarrant County or whatever, because of the jury selection pools will change with those movements. So it's not an unrelated event in terms of — the jury trial is relevant in those considerations. CLEMENT. We completely agree, Your Honor, and we had noted this fact, and, in fact, the — JUSTICE KENNEDY. I do know that area. CLEMENT. Yes. And the district court, in its opinion, which you've referenced a few times, is very detailed, and after analyzing some of these factors that other courts have traditionally looked to, observed — JUSTICE KENNEDY. I would never waive a jury as a lawyer. CLEMENT. Well, and one point, in fairness to my friend on the other side, I will say at the hearing on the motion to strike the jury demand, the representation was made to the court that they would be willing to move back to Sherman if, in fact, he would, you know, recognize the jury waiver. So that offer was made at that point in time to address that particular issue. But the notion that taking it into account here, as the district court did, that was not at all improper. It was simply recognizing an additional factor that favors enforcement. JUSTICE KENNEDY. Well, it's just impropriety. I was just making the limited point of its relevance. CLEMENT. Absolutely, Your Honor, and we would agree with all the points you've just made. Circling back to one final point on this fraud piece, and that is here Mr. Pandy's own pleadings. Notably, Mr. Pandy did not seek rescission of this contract based on the alleged fraud. Instead, what he did by his counterclaims is seek to enforce the contract and recover damages. So there's really a problem here for Mr. Pandy to both have the contract for the benefit of the claims where he's seeking relief, but disavow the contract only in part as to this one specific sentence that he now doesn't like. So on the fraud piece, you have the precedent from other courts, specifically Merrill Lynch and N. Ray Prudential cases. You have the purpose of the provision, these types of provisions that would be defeated if the court were to allow these generalized types of allegations to invalidate its enforcements. And then finally, Mr. Pandy's own pleadings that would not operate to obtain the relief that he's seeking. So in sum, Your Honors, the right to a jury trial is absolutely important, but it's also subject to waiver. And that's exactly what happened here. We have a sophisticated businessman who entered into a knowing and voluntary waiver of a jury trial in any litigation with Pizza Hut. So he cannot now use the lack of a jury trial to evade the consequences of his actions. Unless the Court has any other questions, I'm prepared to sit down. Thank you, Counsel. Briefly, Your Honor, I'd like to start with a couple of issues. I think responding to a couple of your questions that you asked earlier. This is not an arbitration clause. An arbitration clause is not a constitutional right. This is not a change of view. Isn't an arbitration clause by its nature also waive the right to a jury if it had been available for the dispute? So it seems to me it is a waiver of the jury if that, in a lot of cases, would have been available. But an arbitration clause is not a constitutional right here, and the presumption is in favor of the arbitration clause, whereas here the presumption is against the jury waiver. So you're looking at two completely different things. The Tenth Circuit case and the Second Circuit case were decided in the 80s and in the 90s, Your Honor. And both Merrill Lynch and the Tellum cases were after Bruin and after the Rahimi case in this Court, and definitely after Jarski. And so if you look at the principles and the history and tradition of the Seventh Amendment, which I think we need to come back to, recognizing, of course, that you would never have had a pre-dispute jury waiver if you're looking at common law. But here, because it is so important and it is something to really strictly scrutinize if we're giving up a constitutional right, one of the things that the did you actually plead and put in the third amended counterclaim the nexus between the jury waiver and the fraud? Here we did, except we didn't call it jury waiver. We just painted it bigger. But we did put it in our arguments and in our briefing. We also put it in our arguments. I like to put those record sites because that is all that is required by these other cases. It is not required that it is actually in the pleading itself. If we look at the record on page 2650 in our briefing in response to the motion to strike, we specifically tie, we say Pizza Hut's promises, which ultimately convinced defendants to sign the transfer agreement, were a ruse to get a release, jury waiver, damage waiver, and Pizza Hut knew what intended defendants would rely on their promise to use a commercially reasonable effort to locate a purchaser and indeed made little or no effort whatsoever. What document is that? That is the reply to the motion to strike. And then at the argument on the motion to strike, contrary to what my friend, Mr. Jordan, just said, we did tie the two together. On the record on 10023 and 10024, counsel argues what Mr. Pandia did not know at the time as he was negotiating the transfer agreement is that Platt Chima is the original Pizza Hut counsel before Haynes and Boone, was actually hired at the same time and he was negotiating the transfer agreement and was hired to prepare the lawsuit. He was hired to provide advice to Pizza Hut and their lawyers about the release of the waivers. And then on the eve of signing the transfer agreement on August the 20th, they put in a miscellaneous provision that included, among other things, the jury waiver and then told Mr. Pandia he had to sign the document on August the 21st. To Judge Higginbotham's point about the leverage that we had, they held all the leverage on this point. They were threatening if we did not sign it as they sent it over, that they would close down all the stores and they would fire all of our people. So there may have been negotiations back and forth on the three weeks, but on the jury waiver one that we're talking about here, when they put it in, we could do nothing else except for make comments and then we got the final version to sign. And that was it. Mr. Jordan told you there was additional negotiations after the jury waiver. There were none. There's none in the briefing. There's none in the record that you're going to find. Can I say again, no discussions, Post? There's no discussions. You had these comments. You disagree with what was said by Mr. Jordan? I do with respect to the jury waiver, Your Honor. We circled the entire miscellaneous paragraph. You have the comments that we made. None of them go to jury waiver. There was no communication. They don't send them. That's what you mean. There were no discussions about jury waiver. That's what we're talking about here. There weren't discussions about the agreement. About the general release. I don't know that there were verbal discussions. There were verbal, but there may not have been oral, but there were discussions. There were other discussions, but not about the jury waiver. There was no negotiation of the jury waiver. You either signed it or you were closed down, and that was it. Under that fact, knowing the reason why they're putting in the jury waiver is to be able to waive the jury in this particular case, that analysis of fraud should have been considered by the trial court, and it wasn't because it didn't have the guidance that we're asking this court to give. If we're pleading it, if we're arguing it, if we're telling the court exactly where the jury waiver comes in with the nexus, if we're saying that to this court, is that not good enough? It's good with respect to the Tenth Circuit. It's good enough with respect to the Second Circuit. If that's what Pizza Hut's going to rely upon, then it was good enough here and should have been considered by the trial court. But more importantly, we're dealing with here the Seventh Amendment right to trial by jury, and as a constitutional right here, Your Honor, oh, excuse me, as a constitutional right, we should have had that analyzed under principles of tradition and fairness. Thank you. Thank you, Your Honor. Interesting case. Well argued. We appreciate your assistance on it today.